**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BERNABE ENCARNACION,

       Plaintiff,

  - v -            Civ. No. 9:13-CV-1000
                 (TJM/RFT)

M.D. DOCTOR SILVERBERG, *Director of GMCF - DOCS*;
DR. DAVID KARANDY, *FSHD CMCF, DOCS*; DR. CARL
KOENIGSMANN; *Chief HD*, *DOCS*; JANET M. COLLIN,
*Admin. Nurse CMCF, DOCS*, SUE ALDEN, *R. Nurse
CMCF - DOCS*; CHAMBERLAIN, *R. Nurse CMCF - DOCS*;
STEVEN RACETTE, *Warden CMCF - DOCS*, R. GLASEEN,[1]
*Inspector General*; STEVEN FRIES, *Doctor - UPSCF - DOCS*;
RENEE HOLMES, R. Nurse UPSCF - DOCS; DAVID ROCK,
*Warden, Upstate Correctional Facility*; BRIAN FISCHER,
*Commissioner New York State Department of Corrections and
Community Supervision*,

            Defendants.

**APPEARANCES:**        **OF COUNSEL:**

BERNABE ENCARNACION
*Pro se* Plaintiff
91-B-0943
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN    MICHAEL G. MCCARTIN, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

---

[1] Defendant's last name is correctly spelled "Glasheen." The Court will refer to the Defendant herein by his correct last name. *See* Dkt. No. 53-22, Defs.' Mem. of Law, at p. 2.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On June 20, 2013,[2] *pro se* Plaintiff Bernabe Encarnacion, while incarcerated at Upstate Correctional Facility, commenced this action, pursuant to 42 U.S.C. § 1983, stemming from his confinement at both Upstate and Great Meadow Correctional Facilities. Dkt. No. 1, Compl. In his Complaint, Plaintiff alleged the following claims: (1) Eighth Amendment medical indifference claims against Defendants Silverberg, Karandy, Koenigsmann, Collin, Alden, Chamberlain, Fries, Homes, and Fairchild; (2) First Amendment retaliation claims against Defendants Silverberg, Karandy Collin, Alden, Chamberlain, Fries, Homes, and Fairchild; (3) failure-to-investigate claims against Defendants Glasheen, Rock, Fisher, Koenigsmann, and Racette; (4) a right to medical privacy claim against Defendants Fries, Homes, and Fairchild; and (5) asserts supervisory liability against Defendants Rock, Fisher, Koenigsmann, Racette, and Collin for failing to properly supervise their subordinates. *See generally* Compl.

On November 11, 2014, Plaintiff filed an Amended Complaint alleging the

---

[2] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

same aforementioned claims. Dkt. No. 38. The Amended Complaint is presently the operative pleading in this action.³

On February 20, 2015, Defendants filed a Motion for Summary Judgment to dismiss Plaintiff's Amended Complaint in its entirety. Dkt. No. 53. On March 12, 2015, Plaintiff filed a Response in opposition.⁴ Dkt. No. 56.

## I. Discussion

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil

---

³ After reviewing the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b), the Honorable Thomas J. McAvoy, Senior United States District Judge, issued a Decision and Order, dated October 30, 2013, dismissing Defendants Glasheen, Rock, and Fischer, and all claims against them, for failure to state a claim. Dkt. No. 8, Dec. & Order, dated Oct. 30, 2013, at p. 11. On June 18, 2014, Plaintiff filed a Motion to Amend seeking to add Defendants Glasheen, Rock, and Fischer as parties to this action and "additional allegations against them in an attempt to demonstrate that they were personally involved" in the alleged wrongdoing. Dkt. No. 37, Dec. & Order, dated November 24, 2014, at p. 3. On November 24, 2014, Plaintiff's Motion to Amend was granted. *Id.*

⁴ Defendants did not file a Reply.

Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora*

*Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Material Facts

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). At all times relevant to this action, Plaintiff was incarcerated at Great Meadow and Upstate. Dkt. No. 38, Am. Compl., at ¶ 2.

On May 30, 2011, while incarcerated at Great Meadow, Plaintiff forwarded a letter to Defendant Janet Collins, Great Meadow's Nurse Administrator, in which he complained about Nurse Chamberlain's sexual harassment. Dkt. No. 53-5, Ex. 2 at p. 533, Lt. of Compl., dated May 30, 2011. Plaintiff also filed a grievance, date-stamped July 6, 2011, in which he alleged that Nurse Chamberlain harassed and threatened him on June 26, 2011, because of the May 30 complaint; he further complained that, on June 27, 2011, Nurse Alden informed him that Dr. Karandy had discontinued his Ultram medication — which he claimed was in retaliation for submitting the May 30 complaint. Dkt. No. 53-5, Ex. 2 at p. 531, Inmate Grievance Compl., dated July 1, 2011.

Defendant Sue Alden is employed by DOCCS as a Nurse at Great Meadow. Dkt. No. 53-11, Sue Alden, R.N., Decl., dated Feb. 3, 2015, at ¶ 1. On June 27, 2011, Nurse Alden reported that she caught Plaintiff hiding his pain medication under his tongue at 11:00 a.m. that morning.[5] Dkt. No. 53-7, Ex. 4 at p. 398, Ambulatory Health Record [hereinafter "AHR"], dated June 27, 2011. On June 30, 2011, Defendant Dr. David Karandy[6] discontinued Plaintiff's Ultram medication after

---

[5] As a Nurse, Defendant Alden is not authorized to prescribe medication nor discontinue medication for DOCCS inmates; such decisions are made by DOCCS medical doctors. Dkt. No. 53-11, Sue Alden, R.N., Decl., dated Feb. 3, 2015, at ¶ 6.

[6] Dr. David Karandy is employed as a Physician and Facility Health Services Director for the New York State Department of Corrections and Community Supervision. Dkt. No. 53-8, Dr. David Karandy, M.D., Decl., dated Feb. 5, 2015, at ¶ 1.

learning about the "cheeking"[7] incident. Dkt. No. 53-8, Dr. David Karandy, M.D., Decl., dated Feb. 5, 2015, at ¶ 7; *see* Dkt. No. 53-7, Ex. 4 at 397, AHR, dated July 19, 2011. Nurse Alden "had no knowledge whatsoever" that Plaintiff filed a grievance against Nurse Chamberlain, or any other medical personnel employed at Great Meadow prior to reporting that Plaintiff was hiding his Ultram pain medication under his tongue. Alden Decl. at ¶ 7. Defendant Alden further states that she "reported exactly what [she] saw plaintiff do on June 27, 2011." *Id.* at ¶ 8. Dr. Karandy also did not know that Plaintiff had filed a grievance against Nurse Chamberlain. Karandy Decl. at ¶ 8.

On September 14, 2011, Plaintiff met with Dr. Karandy who explained at length why his Ultram was discontinued. *Id.* During the visit, Dr. Karandy noted that Plaintiff did not appear in pain or distress; but nevertheless, he prescribed Feldene[8] as an alternative pain medication. *Id.*; Dkt. No. 53-7, Ex. 4 at p. 395, AHR, dated Sept. 14, 2011.

On November 17, 2011, Plaintiff refused to take his Feldene pain prescription.

---

[7] "Cheeking" is when an inmate attempts to hide medication in his cheek, or under his tongue, in order to sell or barter medications, or sometimes to accumulate a large quantity of medication in order to get high. This is a important consideration when physicians prescribe medications in the prison context. Karandy Decl. at ¶ 5.

[8] Feldene is a pain medication that "is used to reduce pain, swelling, and joint stiffness." Karandy Decl. at ¶ 8. Because Feldene contains Piroxicam, it appears that the medical record uses both terms interchangeably. *See id.*

Dkt. No. 53-7, Ex. 4 at p. 354, Health Provider Order Sheet; Karandy Decl. at ¶ 8.[9] That same day, he was prescribed Tylenol 325 mg. *Id.*, Ex. 4 at p. 354, Health Provider Order Sheet. The next day, November 18, 2011, Plaintiff was prescribed Ibuprofen, however, he refused to take this medication as well. *Id.*, Ex. 4 at p. 390, AHR, dated Nov. 21. 2011.

On November 17, 2011, Plaintiff requested Ultram for pain. Dkt. No. 56, Pl.'s Resp. in Opp'n, Ex. A at p. 391, AHR, dated Nov. 17, 2011. On November 21, 2011, Plaintiff was admitted to the IPC[10] as he was complaining of back pain and inability to walk. Dkt. No. 53-7, Ex. 4 at p. 390, AHR, dated Nov. 21. 2011. While there, he was observed bending, stretching, and walking pain free, with no signs of distress. *Id.* He was then cleared to return back "to population." *Id.*, Ex. 4 at p. 354, Health Provider Order Sheet.

At some point, Plaintiff was transferred to Upstate Correctional Facility. On January 27, 2013, Plaintiff requested Ultram and refused to take over-the-counter pain medication. *Id.*, Ex. 4 at p. 76, AHR Progress Note [hereinafter "Progress Note"], dated Jan. 27, 2013. On January 29, 2013, Plaintiff was observed moving without difficulty. He was again offered over-the-counter pain medication, but he refused the

---

[9] Dr. Karandy states Plaintiff refused his Feldene medication on November 18, 2011, but the medical record indicates that he refused his Feldene medication on November 17, 2011.

[10] The Court is unclear as to what this acronym stands for, but presumes it is a medical area, facility, or clinic.

medication. *Id.*, Ex. 4 at p. 76, Progress Note, dated Jan. 29, 2013. On February 12, 2013, Plaintiff was prescribed Naprosyn, a pain reliving medication. *Id.*, Ex. 4 at p. 74, Progress Note, dated Feb. 12, 2013. However, two days later, on February 15, 2013, Plaintiff returned Naprosyn and stated "I cannot take this." *Id.*, Ex. 4 at p. 73, Progress Note, dated Feb. 13, 2013. As a result, his Naprosyn was discontinued and Plaintiff was instead prescribed Tylenol. *Id.* On February 18, 2013, Plaintiff's prescription Tylenol was also discontinued because Plaintiff did not "want it." *Id.*, Ex. 4 at p. 72, Progress Note, dated Feb. 18, 2013.

On February 27, 2013, Plaintiff requested Ultram, but instead was offered Ibuprofen and over-the-counter Tylenol, which Plaintiff refused. *Id.*, Ex. 4 at p. 71, Progress Note, dated Feb. 17, 2013.

On April 22, 2013, the physician requested x-rays for the Plaintiff as he was complaining of chronic back and knee pain. *Id.*, Ex. 4 at p. 102, X-Ray Requisition and Rep., dated Apr. 22, 2013. However, Plaintiff refused x-rays for his right knee and lumber spine. *Id.*, Ex. 4 at p. 101, Refusal of Medical Examination and/or Treatment, dated Apr. 29, 2013.

On May 13, 2013, Plaintiff refused to take his prescribed Voltaren pain medication, which was prescribed on April 22, 2013. *Id.*, Ex. 4 at p. 64, Progress Note, dated May 13, 2013.

## C. Eighth Amendment Inadequate Medical Care

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd,* 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain."

*Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will re sult." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Here, Plaintiff fails to establish that any of the Defendants acted with deliberate indifference towards his medical needs.[11] The medical record demonstrates that

---

[11] Defendants do not address whether Plaintiff's medical condition constitutes a serious medical need.

Plaintiff, after found "cheeking" his Ultram medication, was repeatedly offered, by various members of the DOCCS medical team at Great Meadow and Upstate, several alternative pain medications such as Ibuprofen, Feldene, prescription Tylenol, over-the-counter Tylenol, and Naprosyn. Thus, Plaintiff's medical indifference claim is simply Plaintiff's disagreement with the treatment he received for his back pain. *Miller v. Winchelle*, 2015 WL 200248, at *5 (N.D.N.Y. Jan. 14. 2015) ("It is true that a mere disagreement with the treatment provided, or with the medication provided does not demonstrate deliberate indifference."); *Polanco v. Dworzack*, 25 F. Supp. 2d 148, 151 (W.D.N.Y. 1998) ("[M]ere disagreement with a prison doctor's professional judgment does not constitute a constitutional violation.") (internal citation omitted). For this reason, the Court recommends **dismissing** Plaintiff's Eighth Amendment claim.

### D. Retaliation

Plaintiff also claims that his Ultram pain medication was discontinued in retaliation for filing the May 30 complaint against Nurse Chamberlain. The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of

retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. *Scott v. Coughlin*, 344 F.3d at 288. To satisfy the third prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872-73. A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the

allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action."  *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he or she would have taken the same action absent the retaliatory motive.  *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) & *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)).

Here, Plaintiff's May 30 complaint constitutes protected speech, and discontinuing adequate pain medication may be an adverse action.  *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (noting that it is "plausible that a denial of adequate pain medication would suffice to deter a similarly situated individual of ordinary firmness from filing a constitutionally protected grievance" ) (cited in *Vail v. Lashway*, 2014 WL 4626490, at *19 (N.D.N.Y. Sept. 15, 2014)).

However, Plaintiff fails to establish a causal connection between Dr. Karandy's decision to discontinue his Ultram pain medication and the May 30 complaint submitted against Nurse Chamberlain.  To begin, Dr. Karandy and Nurse Alden were unaware that Plaintiff filed a complaint against Nurse Chamberlain.  Furthermore, the

May 30 complaint does not name Dr. Karandy nor Nurse Alden,[12] thus, there is no basis for inferring that these Defendants would retaliate against Plaintiff for writing an affidavit in which they were not personally named.[13] *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases for the proposition that a plaintiff fails to demonstrate a causal connection when a defendant is not personally named in a grievance or a complaint). Thus, the Court recommends **dismissing** Plaintiff's retaliation claim.

### E.  Failure to Investigate

Plaintiff claims that Defendant Glasheen failed to properly investigate his May 30 complaint against Nurse Chamberlain. Am. Comp. at ¶ 10. However, "the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally*, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) (prisoners do not have a due process right to a thorough investigation of grievances). Thus, the Court recommends **dismissing** this claim.

---

[12] Plaintiff claims Nurse Alden falsely reported that he was "cheeking" his Ultram pain medication in retaliation for filing a complaint against Nurse Chamberlain.

[13] The May 30 letter does not name any of the Defendants, except for Nurse Chamberlain.

**F. Right to Privacy**

Plaintiff claims that Defendants Dr. Fries, Nurse Homes, and Nurse Fairchild posted a list of his prescribed medications on his cell door "to embarrass[] and humiliate[] him." Am. Compl. at ¶ 30. Although Defendants do not address Plaintiff's right to privacy claim, they are seeking to dismiss this action in its entirety. Dkt. 53-22, Defs.' Mem. of Law, at p. 18. As a result, the Court will review Plaintiff's right to privacy claim *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2).

It is well-settled that inmates have a Fourteenth Amendment right to medical privacy. *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). However, this right is not absolute as privacy interests in medical information vary with the asserted medical condition. *Davidson v. Desai*, 817 F. Supp. 2d 166, 191 (W.D.N.Y. 2011) (citing *Powell v. Schriver*, 175 F.3d at 111). Generally, medical conditions that are kept private due to potential hostility and intolerance from others are entitled to constitutional protection. *Davidson v. Desai*, 817 F. Supp. 2d at 191-92; *Doe v. City of New York*, 15 F.3d 264, 269 (2d Cir. 1994) (HIV status warrants a right to privacy); *see Powell v. Schriver*, 175 F.3d at 111-12 (medical conditions that are private and intimate in nature possess the right to privacy).

Here, Plaintiff fails to establish a privacy interest as he does not specify which

of his medical conditions were disclosed.[14] In addition, he has only submitted a copy of his eye drops medical permit, which he claims is just one of the medical permits/medications that were posted on his cell door. As a result, the Plaintiff does not have a sufficient privacy interest that, if violated, would give rise to a Fourteenth Amendment violation. *See Davidson v. Desai*, 817 F. Supp. 2d at 192 (collecting cases of medical conditions that are not "unusual" so as to merit the Fourteenth Amendment's protection) (citations omitted). Thus, the Court recommends **dismissing** Plaintiff's right to privacy claim.

### G. Personal Involvement

Lastly, Plaintiff cannot demonstrate that Defendants Rock, Fisher, Koenigsmann, Racette, and Collin were personally involved in any wrongdoing because Plaintiff failed to establish that his constitutional rights were violated. As a result, the Court recommends **dismissing** these Defendants from this action.

### II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 53) be **GRANTED in its entirety** and that this action be dismissed; and it is further

---

[14] Plaintiff also fails to state which prescription medications were posted on his cell door.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 7, 2015
      Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge